UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARK ANDREW STEADMAN,                          CIVIL NO. 14-3442 (MJD/JSM)

      Plaintiff,

v.                                                             <u>REPORT AND RECOMMENDATION</u>

TOM ROY, et al.,

      Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the Court upon Defendants Tom Roy, Carol Krippner, Thomas Peckskamp, and the State of Minnesota's Motion to Dismiss [Docket No. 13]. The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL BACKGROUND

As a consequence of his allegedly illegal incarceration following the expiration of his criminal sentence, plaintiff Mark Andrew Steadman ("Steadman") has asserted claims under 42 U.S.C. § 1983 against three state officers in their individual and official capacities—Tom Roy, Commissioner of the Minnesota Department of Corrections ("DOC"), and DOC employees Thomas Peckskamp and Carol Krippner—as well as a pendent state law claim for false imprisonment against the State of Minnesota.

A.      **Plaintiff's Second Amended Complaint**[1]

In his Second Amended Complaint, Steadman alleged the following facts:

On August 17, 2004, Steadman pleaded guilty to first-degree driving while impaired, in violation of Minn. Stat. § 169A.20, subd. 2.  Second Amended Complaint ("SAC") [Docket No. 40], ¶¶ 12, 13 (citing State v. Mark Andrew Steadman, Case Number 62-DX-04-002931).

On October 14, 2004, the Ramsey County District Court, Judge George Stephenson, sentenced Steadman to 72 months of imprisonment and stayed execution of the sentence.  Id., ¶ 14.

On November 5, 2007, Steadman appeared before the Ramsey County District Court for a violation of his probation conditions.  Id., ¶ 15.  Steadman admitted to violating the terms of his probation, and the court, Judge Thomas Mott, executed a sentence of 72 months of imprisonment.  Id.  Judge Mott did not impose any requirement that Steadman be subject to a 5-year term of conditional release following his release from prison.  Id.

On November 9, 2007, Steadman was committed to the custody of the DOC.  Id., ¶¶ 16, 18.  The Ramsey County District Court sent the DOC a copy of the Judgment Upon Conviction/Warrant of Commitment in Case Number 62-KX-04-002931 ("Judgment"), which was added to Steadman's base file with the DOC.  Id., ¶¶ 16, 17.

---

[1]     On October 21, 2014, defendants filed the instant motion to dismiss Steadman's Amended Complaint.  Subsequent to the filing of this motion, Steadman filed a motion to amend his Amended Complaint.  See Motion for Leave to Amend Complaint [Docket No. 32].  Defendants did not object to the amendment and represented that their arguments in support of their motion to dismiss would apply to the Second Amended Complaint.  See Letter dated December 22, 2014 from Lindsay K. Strauss to Hon. Janie S. Mayeron [Docket No. 37].  Thus, the operative complaint which defendants seek to dismiss is the Second Amended Complaint.

The Judgment shows on its face that the court did not impose a 5-year term of conditional release as part of Steadman's executed sentence.  Id., ¶ 16.  Because the Judgment was part of Steadman's base file, defendants Roy, Peckskamp, and Krippner were aware of the terms of Steadman's judicially imposed sentence.  Id., ¶ 17.

On December 13, 2007, Steadman came before the Program Review Team ("PRT") at the Minnesota Correctional Facility in St. Cloud, Minnesota.  Id., ¶ 19.  The PRT consisted of Peckskamp, Steadman's case worker, and Krippner, the PRT chairperson.  Id.  Peckskamp and Krippner prepared and reviewed an Initial PRT Report.  Id., ¶ 20.  Peckskamp and Krippner administratively added a 5-year term of conditional release to Steadman's sentence.  Id., ¶ 21.

On December 20, 2010, Steadman was released from prison and placed on supervised release.  Id., ¶ 24.  Steadman's conditional release term was set to expire in December, 2015.  Id., ¶ 22.

Roy was appointed as Commissioner of Corrections on January 20, 2011.  Id. ¶ 10.  As Commissioner, Roy was responsible for imposing conditions of release under Minn. Stat. § 169A.276, subd. 1 and had final policy making authority for the DOC.  Id., ¶¶ 10, 11.  He also had the power to revoke an offender's conditional release upon failure to comply with the terms of that release.  Id., ¶ 10.

On June 20, 2011, the Minnesota Court of Appeals issued Newcomb v. Roy, 2011 WL 2437489 (Minn. Ct. App. June 20, 2011), an unpublished opinion.  Id. ¶ 27.  In Newcomb, the Court of Appeals held that defendant Roy, as Minnesota Commissioner of Corrections, lacked authority to impose a five-year term of conditional release under

Minn. Stat. § 169A.276, subd. 1(d),[2] where the conditional release term was not imposed by the district court as part of its executed sentence. Id. Therefore, after June 20, 2011, Roy, Peckskamp, and Krippner knew that it was unlawful to continue to subject Steadman to a 5-year term of conditional release that was not imposed as part of his executed sentence. Id., ¶ 28.

Steadman's judicially imposed sentence for first-degree driving while impaired expired on December 9, 2012. Id., ¶ 29. However, Roy, Peckskamp, and Krippner continued to "engage in the unlawful policy, custom, or practice of subjecting persons to administratively imposed terms of conditional release after the expiration of their judicially imposed sentences and continued to unlawfully imprison individuals for violating terms of their administratively imposed conditional release after the expiration of their judicially imposed sentence though they knew or should have known that there

---

[2]      Minn. Stat. § 169A.286, subd. 1(d) provides:

> Notwithstanding the statutory maximum sentence provided in section 169A.24 (first-degree driving while impaired), when the court commits a person to the custody of the commissioner of corrections under this subdivision, it shall provide that after the person has been released from prison the commissioner shall place the person on conditional release for five years. . . . If the person fails to comply with any condition of release, the commissioner may revoke the person's conditional release and order the person to serve all or part of the remaining portion of the conditional release term in prison. The commissioner may not dismiss the person from supervision before the conditional release term expires. . . . The failure of a court to direct the commissioner of corrections to place the person on conditional release, as required in this paragraph, does not affect the applicability of the conditional release provisions to the person.

While the Minnesota Court of Appeals did not expressly state that Minn. Stat. § 169A.286 was unconstitutional under Minn. Const. Art III, that was clearly the gist of its decision. See Newcomb, 2011 WL 2437489, at *1-2.

was no court imposed term of conditional release." Id., ¶ 31.  These policies, customs, or practices have continued up to at least June of 2014.  Id., ¶ 32.

On August 21, 2013, Steadman was arrested for violating the terms of his administratively imposed conditional release.  Id., ¶¶ 33, 34.  On September 6, 2013, Steadman attended a hearing before Tara Rathman, hearings and release officer for the DOC.  Id., ¶ 36.  At the hearing, Steadman admitted to violating the terms of his conditional release.  Id.  Consequently, Steadman was imprisoned for an additional 179 days.  Id.

Sometime prior to December 3, 2013, DOC employee Debra Fiskewold began inquiring as to why Steadman was still imprisoned when the Judgment from the Ramsey County District Court showed that no conditional release term had been imposed.  Id., ¶ 37; see also Goetz Aff. Ex. 2.  As a result of these inquiries, Steadman was released from prison on January 16, 2014.  SAC, ¶ 38.  At the time of his release, Steadman received a letter from Eddie Miles, Jr., Warden of Minnesota Correctional Facility-Lino Lakes ("MCF-Lino Lakes").  The letter stated:

> On November 5, 2007, Ramsey County District Court sentenced you to the commissioner of corrections.  Under the interpretation of the law at that time, the Department added a 5-year term of Conditional Release pursuant to Minn. Stat. § 169A.276 subd. 1(d).  The term of Conditional release has been removed from your sentence and you are hereby discharged as of December 22, 2012. . . .

Id., ¶ 39; see also Affidavit of Lindsay K. Strauss, Ex. 2 (Notice of Sentence Expiration and Restoration of Civil Rights).

As a result of the actions and omissions of defendants, Steadman suffered loss of liberty based on the wrongful incarceration from August 21, 2013 through January 16,

2014, the loss of his full-time job, loss of past and future wages, and great embarrassment and emotional distress. Id., ¶ 47.

Steadman has asserted three claims for relief: (1) a claim against the State of Minnesota for false imprisonment under Minnesota law; (2) a claim under 42 U.S.C. § 1983 against Roy in his individual capacity for depriving Steadman of his right to liberty in violation of the Fourteenth Amendment to the United States Constitution; and (3) a claim under § 1983 against Roy, Peckskamp, and Krippner in their individual capacities for depriving Steadman of his right to liberty in violation of the Fourteenth Amendment. Id., ¶¶ 48-72.

For relief, Steadman requested compensatory and punitive damages, attorney's fees, and costs in excess of $50,000. Id., Section IX, ¶¶ 1-5.

**B.  Defendants' Motion to Dismiss**

In support of their motion to dismiss, defendants argued that Steadman's § 1983 claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because Steadman is seeking to invalidate the DOC's decision to extend his incarceration.  Defendants Tom Roy, Carol Krippner, Thomas Peckskamp, and State of Minnesota's Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), pp. 4-5 [Docket No. 15]. Defendants also contended that Steadman cannot maintain a § 1983 claim against the State of Minnesota or against Roy in his official capacity because neither a state nor a public official acting in his official capacity are suable "persons" for purposes of § 1983 liability.  Id., p. 6.  Defendants further maintained that the Eleventh Amendment precludes Steadman's claims for damages against the State of Minnesota and Roy, Krippner, and Peckskamp in their official capacities.  Id., pp. 6-8.  In addition,

defendants argued that Steadman cannot maintain a § 1983 claim against Roy in his individual capacity because he has not alleged sufficient personal involvement by Roy in the alleged violations of Steadman's rights.[3]  Id., pp. 7-8.  Finally, defendants urged the Court to decline to exercise supplemental jurisdiction over Steadman's state law claims because all of his federal claims should be dismissed.  Id., p. 9.

Steadman responded that Heck does not apply in this case because his § 1983 claims do not impugn the validity of either his conviction for driving while impaired or the duration of his sentence.  Plaintiff's Memorandum of Law in Opposition to Defendants Tom Roy, Carol Krippner, Thomas Peckskamp, and State of Minnesota's Motion to Dismiss ("Pl.'s Mem."), pp. 20-26 [Docket No. 24].  Steadman admitted that Heck is not rendered inapplicable merely because an inmate has been released from custody.  Id., p. 25.  However, he claimed that Heck does not apply to claims arising from wrongful imprisonment after the expiration of a prisoner's sentence.  Id., p. 26.  Steadman further argued that, even if the Court were to find that Heck applied, he has satisfied its requirements because "the executive branch has declared invalid the imprisonment that resulted from the violation of the five-year conditional release term administratively imposed by the DOC."  Id., pp. 26-27.  In support, Steadman cited the letter he had received from the Warden of MCF-Lino Lakes on January 16, 2014, which stated that the five-year conditional release term had been removed from his sentence and that he was "'hereby discharged as of *December 22, 2012*.'"  Id. (emphasis in original) (quoting First Amended Complaint, ¶ 40 [Docket No. 12]).

As for defendants' Eleventh Amendment arguments, Steadman agreed that the

---

[3]      Defendants did not make this argument as to Peckskamp and Krippner.

Eleventh Amendment bars his § 1983 claims against the State of Minnesota and against Roy in his official capacity.  Id., p. 27.  However, Steadman maintained that he has alleged adequate personal involvement by Roy to proceed against him in his individual capacity, both as a direct participant in the violation of his rights and through his failure to train or supervise the other defendants who caused the violation.  Id., pp. 27-32.  Specifically, Steadman contended that Roy, as a named party in Newcomb, was aware that he lacked the power to impose conditional release terms under Minn. Stat. § 169A.276, subd. 1, unless such a term was included in the sentencing court's judgment.  Id., p. 29-30.  Further, because the original judgment issued by the Ramsey County District Court was part of Steadman's base file, Roy knew he had no authority to impose a conditional release term upon Steadman upon his release from custody.  Id.  Moreover, Roy made no effort to change the DOC's erroneous interpretation of Minn. Stat. § 169A.276, subd. 1, and he failed to adequately train and supervise DOC employees to prevent future violations that he knew were likely to occur.  Id., pp. 30-31.  Lastly, Steadman argued that this Court should continue to exercise supplemental jurisdiction over his state law claim if his federal claims survive the motion to dismiss.  Id., p. 32.

In reply, defendants argued that Heck applies to § 1983 claims challenging "unconstitutional conviction or *imprisonment*," and courts have frequently applied Heck when a prisoner challenges decisions by prisoner officials that extend incarceration.  Defendants Tom Roy, Carol Krippner, Thomas Peckskamp, and State of Minnesota's Reply Memorandum of Law in Support of Motion to Dismiss ("Defs.' Reply"), p. 5 [Docket No. 28] (quoting Heck, 512 U.S. at 486) (emphasis added by defendants).

Defendants noted that application of <u>Heck</u> is not limited to incarceration based on an inmate's original court-ordered sentence or conviction. <u>Id.</u>, p. 7 n. 5 (citing <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 82 (2005)).   In any event, Steadman's five-year conditional release period was part of his criminal sanction, and therefore, the DOC's employees had authority to incarcerate him beyond his court-imposed sentence.   <u>Id.</u>, p. 9. Defendants further contended that creating an exception to <u>Heck</u> for cases in which the inmate asserts that the prison did not have authority to imprison him would render <u>Heck</u> meaningless, as such an exception would apply to all challenges to the fact or duration of confinement.   <u>Id.</u>   Defendants also denied that Steadman had demonstrated prior invalidation of his confinement because the Warden of MCF-Lino Lakes did not expunge Steadman's underlying conviction or sentence. <u>Id.</u>, pp. 10-13.

With respect to the personal involvement of Roy, defendants pointed out that the Second Amended Complaint does not allege that Roy actually recommended or implemented Steadman's conditional release term, nor does it demonstrate that Roy knew or had reason to know that such a term had been imposed.   <u>Id.</u>, p. 14. Defendants also noted that Steadman never contacted Roy to inform him that he was unlawfully incarcerated.   <u>Id.</u>, p. 16.   Therefore, according to defendants, Steadman has failed to establish that Roy had personal knowledge or direct involvement in any wrongdoing.   <u>Id.</u>

## II.    STANDARD OF REVIEW

A civil complaint will be dismissed upon motion by a defendant if the plaintiff has failed to plead an actionable claim for relief against that defendant.   Fed. R. Civ. P. 12(b)(6).   In considering a motion to dismiss under Rule 12(b)(6), the pleadings are

construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  In re Operation of Mo. River Sys. Litig., 418 F.3d 915, 917 (8th Cir. 2005) (citations omitted); see also Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks omitted) (quoting Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963)).

Litigants also must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Twombly and Iqbal.  To satisfy Rule 8 and Twombly and Iqbal, "a complaint need not contain 'detailed factual allegations,' . . . ."  United States ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (quoting Twombly, 550 U.S. at 555).  However, "it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  Id. (citation omitted).  Accordingly, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss.  However, "a court may consider the complaint, matters of

public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Wickner v. McComb, 2010 WL 610913, at *5 (D. Minn. 2010) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

## III.   DISCUSSION

### A.   Claims Under 42 U.S.C. §1983

Steadman has brought suit against defendants pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Pursuant to § 1983, an individual may "vindicate rights conferred by the Constitution or laws of the United States."  Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000); see also Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992), cert. denied 506 U.S. 1081 ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (citing Thomas v. Shipka, 818 F.2d 496, 499 (6th Cir. 1987) ("where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violation"), vacated on other grounds by 488 U.S. 1036 (1989); Hunt v. Robeson Cnty. Dept. of Social Serv., 816 F.2d 150 (4th Cir. 1987); Morris v. Metro. Area Transit Auth., 702 F.2d 1037 (D.C. Cir. 1983)).

1.     **Eleventh Amendment Immunity**[4]

Defendants have contended that the Eleventh Amendment bars Steadman's § 1983 claims against the State of Minnesota and Roy, Peckskamp, and Krippner in their official capacities.  Defs.' Mem., pp. 6-8.

The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  U.S. Const. amend. XI. Under the Eleventh Amendment, federal courts lack jurisdiction over a claim against a state when that state has not consented to the suit.  See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64-65 (1996).  When a lawsuit is barred by the Eleventh Amendment, the case must be dismissed for lack of subject matter jurisdiction.  Seminole Tribe, 517 U.S. at 64-65.

(a)     Claims against the State of Minnesota

Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979); see also Larson v. Kempker, 414 F.3d 936, 939 n. 3 (8th Cir. 2005) ("Section 1983 does not contain a clear legislative

---

[4]     In his First Amended Complaint, Steadman asserted § 1983 claims against the State of Minnesota and Roy, Peckskamp, and Krippner in their official capacities.  First Amended Complaint, ¶¶ 54-65 [Docket No. 12].  Steadman then sought permission from the Court to amend his pleading.  Motion for Leave to Amend Complaint [Docket No. 32].  At the hearing, Steadman represented that his Second Amended Complaint would not include § 1983 claims against the State of Minnesota or against Roy, Peckskamp, or Krippner in their official capacities.  Despite Steadman's representations, the caption of the Second Amended Complaint filed by Steadman after the hearing, still names Roy, Peckskamp, and Krippner in both their individual and official capacities, as does paragraph 2.  As it is unclear whether Steadman is continuing to pursue his § 1983 claim against the State of Minnesota and Roy, Peckskamp, and Krippner in their official capacities, the Court briefly addresses defendants' argument that the Eleventh Amendment bars such claims.

statement abrogating a state's immunity under the Eleventh Amendment.") (citation omitted).  Thus, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); see also Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 743-44 (8th Cir. 1998); Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).

Here, the State of Minnesota has not waived its immunity from § 1983 claims, (Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233, at *3 (D. Minn. 2009)), nor has Minnesota consented to suit.  See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (finding that waiver of immunity by a state will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'") (quoting Florida Dep't of Health & Rehabilitation Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147 (1981)).  In fact, Steadman agreed that the Eleventh Amendment bars § 1983 claims against the State of Minnesota.  Pl.'s Mem., p. 27. Accordingly, the Court concludes that all claims asserted under 42 U.S.C. § 1983 against the State of Minnesota should be dismissed for a lack of subject matter jurisdiction.[5]

---

[5]    As a general rule, when an action is dismissed for lack of subject matter jurisdiction, it is dismissed without prejudice, because the dismissal is not on the merits. See O'Grady v. Marathon Cnty. Child Support Agency, Civ. No. 05-2418 (JNE/JJG), 2006 WL 1715473 at *1 (D. Minn., June 19, 2006) (citing Frederiksen v. City of Lockport, 384 F.3d 437, 438-39 (7th Cir. 2004)).   "A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." Id. (quoting Frederiksen, 384 F.3d at 438); cf. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for

(b)     Official-Capacity Claims against Roy, Peckskamp and Krippner

Eleventh Amendment immunity extends to claims against state officials for money damages and other retrospective relief because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citation omitted); see also Morstad, 147 F.3d at 743 (finding that state employees sued in official capacities are not liable for damages under § 1983).

Steadman has asserted § 1983 claims for compensatory damages against the individual defendants in their official capacities.  However, none of these defendants has consented to suit.  As such, the Eleventh Amendment bars these § 1983 claims for compensatory and punitive damages against defendants Roy, Peckskamp and Krippner in their official capacities, and this Court lacks jurisdiction over the matter.  See Randall v. LeBlanc, No. 05-2504, 2005 WL 2897903, at *1 (8th Cir. Nov. 4, 2005) (per curium) (finding that plaintiff's request for "damages fails because the defendant federal prison officials—all of whom were sued in their official capacities—are immune from liability for monetary damages in this case.") (citing Hagemeier v. Block, 806 F.2d 197, 202-03 (8th Cir. 1986)).[6]  These claims should be dismissed without prejudice.

_____

lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."); Cnty. of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir.2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.")).

[6]     In his memorandum, plaintiff admitted that the Eleventh Amendment bars § 1983 claims against Roy in his official capacity.  Pl.'s Mem., p. 27.

### 2.      Claims Against Roy in His Individual Capacity

To state an actionable § 1983 claim against a defendant in his or her individual capacity, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the defendant violated the complainant's federal constitutional rights while acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey Cnty., 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same).  In other words, civil rights claimants must plead sufficient facts showing each named defendant's personal involvement in alleged constitutional wrongdoing.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999) (emphasis added); see also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim.").

Section 1983 actions against an individual cannot be premised on respondeat superior liability; a defendant can only be liable for his or her personal acts.  See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights.") (citation omitted); White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994) ("A supervisor is

not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity.") (quoting Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.), cert. denied, 493 U.S. 993 (1989)).  As such, general responsibility for supervising a facility is not sufficient to establish personal liability.  See Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (citing Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987)).

"While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue."  Jackson, 747 F.3d at 543 (citations omitted); see also Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) ("[A] supervising officer can be liable for an inferior officer's constitutional violation only 'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'") (quoting Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)).  "'[A] failure to supervise claim may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts.'"  Beaulieu v. Ludeman, 690 F.3d 1017, 1031 (8th Cir. 2012) (quoting Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998)).  Therefore, "'[a] bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of inadequate training or supervision of subordinates, is [not] sufficient to state a [§ 1983] claim.'"  Id. at 1030-31 (quoting Estate of Rosenberg by Rosenberg, 56 F.3d at 37).

In determining whether a supervisor was personally involved in the deprivation of constitutional rights, a court must "assess each defendant relative to his authority over the claimed constitutional violation." Jackson, 747 F.3d at 543. "Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." Jackson, 747 F.3d at 543 (quoting Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009)).

In this case, Steadman alleged that Roy personally participated in the alleged violation of his rights by failing to alter the DOC's interpretation of Minn. Stat. § 169A.276, subd. 1, after the Minnesota Court of Appeals in Newcomb held that the DOC could not impose a term of conditional release unless such term had been ordered by the sentencing court. Pl.'s Mem., pp. 29-30; SAC, ¶¶ 54-61. Because Roy was a named party in Newcomb, Steadman submitted that Roy knew or should have known that the DOC's practice of administratively adding a five-year term of conditional release was unlawful. Pl.'s Mem., p. 30. Despite this knowledge, Roy continued to enforce the unlawful practice or policy of adding conditional release terms to prisoners' sentences. Id.; SAC, ¶ 60.

"The authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983. . . . [A] DOC director may be 'responsible for his own failure to act,' based on his statutory duty to administer the Department of Corrections and 'supervise the administration of all institutions, facilities and services under the Department's jurisdiction' and his authority to change the challenged policies." Jackson, 747 F.3d at 544 (quoting Messimer v. Lockhart, 702

F.2d 729, 732 (8th Cir. 1983)).   "Moreover, an allegation that the DOC director authorized an unconstitutional policy may be sufficient to state a claim 'for actions allegedly taken directly by' the director."   Id. (quoting Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999)).

In Jackson, the appellant Jackson brought a § 1983 suit against state officials involved in administering and supervising the Western Reception, Diagnostic, and Correctional Center ("WRDCC") in St. Joseph, Missouri, where Jackson had been incarcerated.   Id. at 539.   Jackson, an atheist, had been required to attend the WRDCC's Offenders Under Treatment Program ("OUTP") as part of a stipulation with the Missouri Department of Corrections Board of Probation and Parole.   Id. at 539-40. According to Jackson, the state defendants coerced him into altering his behavior and thinking by requiring OUTP attendees to use the serenity prayer and engage in religious meditations.   Id. at 540.   On the issue of personal involvement, Jackson alleged that Larry Crawford, Director of the Missouri Department of Corrections, "knew or should have known of the changes of Constitutional policy and how they [affected] inmate[s] like me under his jurisdiction."   Id. at 544 (alteration in original) (citation and internal quotation marks omitted).   Jackson argued that, "by virtue of [his] position[] within the prison system, Crawford . . . can be held liable under § 1983."   Id.   The district court dismissed Jackson's complaint for failure to state a claim upon which relief may be granted.   Id.

On appeal, the Eighth Circuit considered the statutory powers and duties of the Missouri Director of Corrections and determined that Jackson had alleged sufficient personal involvement by Crawford.   The court explained:

> Under Missouri law, "[t]he general supervision, management and control of the department of corrections shall be in the director of corrections."  As such, MDOC Director Crawford is required to "establish the duties and responsibilities of employees of the department" and "supervise their work assignments." He is "responsible for the implementation of uniform policies and procedures governing offenders and staff," and he must "make and enforce such rules, regulations, orders and findings as the director may deem necessary for the proper management of all correctional centers and persons subject to the department's control." MDOC is statutorily required to "establish rules determining how, when and where an offender shall be admitted into or removed from the [Offenders Under Treatment] program." Given Crawford's statutory duties, including those associated with administration of the OUTP, Jackson's complaint alleged sufficient personal involvement as to MDOC Director Crawford.

Id. at 544-45 (alteration in original) (internal citations omitted).

In the instant case, the powers and duties of the Minnesota Commissioner of Corrections—i.e. Roy—are similar to those of the Missouri Director of Corrections.  By statute, Roy has a duty

> (d) To administer, maintain, and inspect all state correctional facilities.
>
> * * *
>
> (g) To organize the department and employ personnel the commissioner deems necessary to discharge the functions of the department, including a chief executive officer for each facility under the commissioner's control . . . .
>
> (h) To define the duties of these employees and to delegate to them any of the commissioner's powers, duties and responsibilities, subject to the commissioner's control and the conditions the commissioner prescribes.

Minn. Stat. § 241.01, subd. 3a (2014).  In addition, all department commissioners have the power "to prescribe procedures for the internal management of the department or agency to the extent that the procedures do not directly affect the rights of or procedure available to the public."   Minn. Stat. § 15.06, subd. 6(4).   As Commissioner of

Corrections, Roy also has authority to establish policies defining the duties and procedures of the Program Review Team ("PRT"), which allegedly imposed the five-year conditional release term on Steadman's sentence.  <u>See</u> DOC Policy Directive 203.019 (stating that policy establishing PRT was passed pursuant to Minn. Stat. § 241.01).

Given the statutory powers and duties granted to the Commissioner of Corrections, including those related to the administration of the PRT, the Court concludes that Steadman has alleged sufficient personal involvement by Roy.

In reaching this conclusion, the Court rejects defendants' contention that Steadman cannot pursue Roy in his individual capacity because Roy had no contact with Steadman and, therefore, lacked personal knowledge of Steadman's sentence or the terms of his conditional release.  Defs.' Reply, p. 16.  This is because a supervisor may be liable for a failure to fulfill a statutory duty to administer a prison, even without actual knowledge of the particular violation asserted by the claimant.  <u>See</u> <u>Messimer v. Lockhart</u>, 702 F.2d 729, 732 (8th Cir. 1983).

In <u>Messimer</u>, inmates housed in the prison's protective custody unit filed suit under § 1983 against Lockhart, Director of the Arkansas Department of Correction.  The inmates asserted that Lockhart, in violation of department regulations, moved the protective custody unit from a cell block to an open barracks, and that, as a result, the inmates were sexually harassed by other protective custody inmates.  702 F.2d at 731.  Lockhart argued that "even if the complaint alleges Lockhart's direct involvement, 'administrative decisions concerning the [protective custody] Unit of the Arkansas Department of Correction are made by the warden of that unit and not appellee as

Director of the Department of Correction.'" Id. at 732 (citation omitted). The Eighth

Circuit rejected this argument, holding as follows:

> In *Cotton* [*v. Hutto*, 577 F.2d 453 (8th Cir. 1978)] the plaintiff
> sought damages from the warden, alleging that he had been
> subjected to a disciplinary proceeding for refusing to change
> a hair style which, according to the plaintiff, had religious
> significance. We held that the complaint failed to state a
> claim for relief against the warden, because a prison guard
> instituted the disciplinary action and the warden was "not
> alleged to have had any knowledge of, or connection with,
> this incident." *Id.* at 455.
>
> Here, however, the plaintiffs are not complaining about
> isolated instances of alleged mistreatment; they are
> complaining about policy decisions made by those in charge
> of the prison. Lockhart has a statutory duty to "[a]dminister
> the Department [of Correction] and supervise the
> administration of all institutions, facilities and services under
> the Department's jurisdiction." Ark.Stat.Ann. § 46-105(a)
> (1977). The State conceded at oral argument that Lockhart
> has authority to change policies instituted by the warden of
> the [protective custody] Unit. Thus, Lockhart may be
> responsible for his own failure to act.

Id.

Here, similar to Messimer, Steadman has sought to challenge the DOC's policy

of administratively imposing terms of conditional release on offenders' sentences. As

explained above, Roy had a duty as Commissioner of Corrections to administer state

correctional facilities, define the duties of DOC employees, and prescribe agency

regulations, including those associated with the PRT. Consequently, even if Roy lacked

personal knowledge of Steadman's sentence or conditional release term, he may

nonetheless be responsible for his failure to alter DOC policy in light of Newcomb.

For all of these reasons, defendants' motion to dismiss Roy for lack of personal

involvement should be denied. Steadman can proceed on his claims for damages

against Roy, Peckskamp and Krippner in their individual capacities, unless <u>Heck</u> precludes such claims.[7]

### B.      <u>Favorable Termination Rule Under Heck</u>

"Section 1983 authorizes a 'suit in equity, or other proper proceeding for redress,' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" <u>Nelson v. Campbell</u>, 541 U.S. 637, 643 (2004).  However, "§ 1983 must yield to the more specific federal habeas statute . . . where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." <u>Id.</u> (citing <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 489 (1973)); <u>see</u> <u>also</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 392 (2007) ("[H]abeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement . . . .") (quoting <u>Preiser</u>, 411 U.S. at 488-90)).  Accordingly, in <u>Heck</u>, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87 (footnote omitted).  In other words, "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner

---

[7]      As noted above, n. 3, <u>supra</u>, defendants did not assert that Peckskamp and Krippner lacked sufficient personal involvement to be held liable in their individual capacities for their actions.

can demonstrate that the conviction or sentence has previously been invalidated." Edwards v. Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, 512 U.S. at 487). "This holding has been referred to as the 'favorable termination' requirement." Marlowe v. Fabian, 676 F.3d 743, 746-47 (8th Cir. 2012) (citing Heck, 512 U.S. at 499 n. 4 (Souter, J., concurring)).

Additionally, a "§ 1983 plaintiff must show a favorable termination by state or federal authorities even when he is no longer incarcerated." Id. (citation omitted); Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007) ("'[T]he principle barring collateral attacks–a longstanding and deeply rooted feature of both the common law and our own jurisprudence–is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.'") (quoting Heck, 512 U.S. at 490 n. 10); Bandy v. Comm'r of Correction, Civ. No. 13-2209 (JRT/LIB), 2014 WL 28792, at *3 (D. Minn. Jan. 2, 2014) ("But even when habeas is no longer available because a prisoner is no longer incarcerated, the Eighth Circuit has held that *Heck* still bars a former prisoner's § 1983 action that would undermine the sentence or conviction where the plaintiff fails to demonstrate the invalidity of the sentence or conviction.") (citing Entzi, 485 F.3d at 1003)).

"By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of [the] core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance." Nelson, 541 U.S. at 643 (citations omitted); see also Heck, 512 U.S. at 483 ("[T]he question posed by § 1983 damages claims that do call into question the lawfulness of conviction or confinement remains open."). For example, a claim for

"correction of inaccurate and prejudicial information in [a prisoner's] parole file" would be permissible because it would not necessarily implicate the validity of the prisoner's continued confinement.  Cooper v. Mo. Parole Bd., 68 F.3d 478 (8th Cir. 1995); see also Dotson, 544 U.S. at 82 (holding that § 1983 challenge to state procedures determining parole eligibility was not barred by Heck because success would not necessarily result in immediate or speedier release).

In this case, Steadman argued that success on his § 1983 claim would not impugn the validity of his conviction or sentence because his claims "arise from his wrongful imprisonment after the expiration of his sentence by state officials who lacked any authority whatsoever to imprison [him]."  Pl.'s Mem., p. 20 (emphasis in original). Thus, "'the incarceration that matters under Heck is the incarceration ordered by the original judgment of conviction . . . .'"  Id., p. 24 (quoting Muhammad v. Close, 540 U.S. 749, 752 n. 1 (2004)).[8]

This Court rejects Steadman's narrow interpretation of Heck.  As the Supreme Court later clarified, the Heck rule applies "no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Dotson, 544 U.S. at 81-82 (emphasis in original); see also Miller v. Indiana Dep't of Corr., 75 F.3d 330, 331 (7th Cir. 1996) ("The issue, we emphasize, is not the relief sought, but the ground of the challenge."); Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996) ("Under Heck,

---

[8]      Interestingly, in Newcomb, the case upon which Steadman relied to support his claim against Roy in his individual capacity, the Minnesota Court of Appeals indicated that it was analyzing the imposition of a conditional release term as a criminal sentence. 2011 WL 2437489, at *2 n. 1 (citation omitted).

however, we disregard the form of relief sought and instead look to the essence of the

plaintiff's claims.") (citation omitted).[9]   Here, Steadman has asserted that the DOC had

no authority to impose an additional term of conditional release onto his court-ordered

sentence.   That claim, if successful, would necessarily demonstrate that Steadman's

incarceration based on a violation of the conditional release term was invalid.   Therefore

Heck applies, and Steadman must show that his incarceration—whether imposed by

---

[9]     The Court in Dotson summarized its body of case law bearing on the intersection
of habeas corpus and § 1983:

> Throughout the legal journey from *Preiser* to *Balisok,* the
> Court has focused on the need to ensure that state prisoners
> use only habeas corpus (or similar state) remedies when
> they seek to invalidate the duration of their confinement—
> either *directly* through an injunction compelling speedier
> release or *indirectly* through a judicial determination that
> necessarily implies the unlawfulness of the State's custody.
> Thus, *Preiser* found an implied exception to § 1983's
> coverage where the claim seeks—not where it simply
> "relates to"—"core" habeas corpus relief, *i.e.,* where a state
> prisoner requests present or future release.   *Wolff* [v.
> *McDonnell*, 418 U.S. 539 (1974)] makes clear that § 1983
> remains available for procedural challenges where success
> in the action *would not necessarily* spell immediate or
> speedier release for the prisoner.   *Heck* specifies that a
> prisoner cannot use § 1983 to obtain damages where
> success *would necessarily* imply the unlawfulness of a (not
> previously invalidated) conviction or sentence. And *Balisok,*
> like *Wolff,* demonstrates that habeas remedies do not
> displace § 1983 actions where success in the civil rights suit
> would not necessarily vitiate the legality of (not previously
> invalidated) state confinement. These cases, taken together,
> indicate that a state prisoner's § 1983 action is barred
> (absent prior invalidation)—no matter the relief sought
> (damages or equitable relief), no matter the target of the
> prisoner's suit (state conduct leading to conviction or internal
> prison proceedings)—*if* success in that action would
> necessarily demonstrate the invalidity of confinement or its
> duration.

544 U.S. at 81-82 (internal citations omitted).

sentence or otherwise—was favorably terminated.

Indeed, if a § 1983 claimant could avoid the Heck bar merely by asserting that his jailor lacked legal authority to hold him (as every claimant does), Heck would be rendered meaningless.  Further, the fact that Steadman was imprisoned solely on the authority of an executive agency, and not by order of the court, makes no difference under Heck.  For example, the Heck bar applies equally to civil detainees who were never tried, convicted or sentenced.  See Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005) (applying Heck to detainees confined under California's Sexually Violent Predators Act), cert. denied, 547 U.S. 1166 (2006); Suchan v. Jesson, Civ. No. 13-3127 (JNE/SER), 2014 WL 461174, at *3 (D. Minn. Feb. 5, 2014) ("[T]he rule set forth in Preiser, and reiterated in Heck, is fully applicable to state detainees confined by reason of a civil commitment order, rather than a prison sentence.") (citation omitted); Henry v. Minnesota, Civ. No. 11-3136 (SRN/TNL), 2011 WL 6003969, at *2 (D. Minn. Nov. 8, 2011) ("The principles set forth in Heck are fully applicable to state detainees who are confined by reason of a civil commitment, rather than a prison sentence.") (Report and Recommendation adopted by Order dated Oct. 24, 2011); cf. Preiser, 411 U.S. at 489 ("[T]he result must be the same in the case of a state prisoner's challenge to the fact or duration of his confinement, based, as here, upon the alleged unconstitutionality of state administrative action. Such a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement . . . .") (emphasis added).

In sum, the Court concludes that success on Steadman's § 1983 claims would necessarily demonstrate the invalidity of his confinement or its duration, and therefore,

Heck bars Steadman's claims unless he can show that his sentence has previously been invalidated.

Having determined that Heck's favorable termination requirement applies to the instant case, the Court now must examine whether Steadman has satisfied this condition.   Heck held that a § 1983 claimant must prove that his conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."   512 U.S. at 486-87.   In that regard, Steadman pointed to a letter he had received from Eddie Miles Jr., Warden of MCF-Lino Lakes, entitled "Notice of Sentence Expiration and Restoration of Civil Rights," which provided:

> On **November 5, 2007**, Ramsey County District Court sentenced you to the Commissioner of Corrections.  Under the interpretation of the law at that time, the Department added a 5 year term of Conditional Release pursuant to Minn. Stat. § 169A.276, subd. 1(d).  The term of Conditional release has been removed from your sentence and you are hereby discharged as of **December 22, 2012**, pursuant to Minnesota Statutes, Section § [sic] 609.165, your discharge today means that your civil rights have been restored.

Strauss Aff., Ex. 2 (emphasis in original).

According to Steadman, this letter demonstrates that "the executive branch, through Eddie Miles Jr., Warden of Minnesota Correctional Facility-Lino Lakes, invalidated [Steadman's] period of imprisonment on January 16, 2014, when it confirmed that the five year term of conditional release that led to the incarceration at issue had been removed from Steadman's sentence and that Steadman was 'hereby discharged as of December 22, 2012.'"   Pl.'s Mem., pp. 26-27 (emphasis added by Steadman) (citation omitted); Strauss Aff., Ex. 2.   In short, Steadman argues that the

executive branch invalidated his conditional release, and as a result, Heck does not bar his § 1983 claims.  Pl.'s Mem., pp. 26-27.  This Court agrees.

Heck expressly approves of "expunge[ment] by executive order."  512 U.S. at 487.  To satisfy the favorable termination requirement, an executive order must "'destroy; blot out; obliterate; erase; efface designedly; [or] strike out wholly'" a conviction or term of incarceration.  Wilson v. Lawrence Cnty., Mo., 154 F.3d 757, 760-61 (8th Cir. 1998) (quoting Black's Law Dictionary 582 (6th ed. 1990)).

In Wilson, the Eighth Circuit acknowledged that under Heck, a former inmate can maintain a § 1983 action by showing that his conviction has been invalidated by some means independent of the instant proceeding, (id. at 760), and that "Heck condones collateral proceedings as a mechanism for satisfying its mandates."  Id. at 761.  Then, after recognizing that "Heck does not list an executive pardon among the ways a state conviction can be invalidated for purposes of 1983," the court held that an executive pardon of a former inmate's conviction invalidated the conviction and constituted an "expungement by executive order" for purposes of Heck.  Id.

In this case, an agency within the executive branch of the State of Minnesota—the DOC—via the letter from Eddie Miles Jr., not only discharged Steadman from custody, but it also retroactively removed the entire term of conditional release that it had imposed on Steadman.  Although it is not yet known at this juncture whether the DOC's actions in fact amounted to an expungement of Steadman's conditional release term, on these facts, which for the purpose of a motion to dismiss must be accepted as true, "it would be premature at this stage to conclude that this does not amount to a favorable termination under Heck . . . ."  Bandy, 2014 WL 28792, at *4 (declining to

dismiss claim under <u>Heck</u> after plaintiff alleged his imprisonment had been invalidated based on correction of false information by the DOC used to revoke supervised release).[10]

This conclusion is bolstered by Steadman's allegation that, based on <u>Newcomb</u>—which declared the DOC's imposition of a term of conditional release pursuant to Minn. Stat. § 169A.276 unlawful—defendants were aware that "this interpretation of the law as set forth in Warden Miles' letter of January 16, 2014, was

---

[10]    In their reply, defendants noted that <u>Heck</u> "does not broadly include all executive actions." Def.'s Reply, p. 11 (citing <u>Cooke v. Peterson</u>, Civ. No. 12-1587 (DSD/JJK), 2012 WL 6061724 (D. Minn. Dec. 6, 2012).   While that may be true as a general proposition, <u>Cooke</u> is distinguishable from the facts pled by Steadman.   In that case, the plaintiff Cooke admitted to violating the terms of his probation and was sentenced to 15 1/3 months of imprisonment, followed by 7 2/3 months of supervised release. <u>Id.</u> at *1. On September 10, 2008, after serving his term of imprisonment, Cooke began his supervised release term. <u>Id.</u>  On February 17, 2009, Cooke's supervised release was revoked, and he was sentenced to 365 days of imprisonment. <u>Id.</u>  Cooke's term of incarceration was extended on January 11, 2010, and again on October 11, 2010 and June 24, 2011. <u>Id.</u>  On March 28, 2012, Cooke filed an administrative appeal in which he contested these extensions. <u>Id.</u>  Cooke was released from prison on April 11, 2012. Cooke then filed suit under § 1983 against various prison officials, alleging violations of due process and the Eighth Amendment, as well as false imprisonment under state law. <u>Id.</u>  The defendants moved to dismiss on the grounds that Cooke's federal claims were Heck-barred.   <u>Id.</u> at *2.   Cooke responded that he sought only to challenge the administrative decisions that extended his incarceration, and not his court-imposed sentence.   <u>Id.</u>  The court found that <u>Heck</u> applied because Cooke was attempting to demonstrate the invalidity of the duration of his confinement and, therefore, Cooke's claims were barred unless he satisfied the favorable termination requirement. <u>Id.</u> Cooke argued that he had met the favorable termination requirement because his release following administrative appeal constituted an expungement by executive order. <u>Id.</u>  The court disagreed, as Cooke had not alleged that the administrative action purported to "'destroy; blot out; obliterate; erase; efface designedly [or] strike out wholly' the conviction." <u>Id.</u> (quoting <u>Wilson</u>, 154 F.3d at 760-61) (alteration in original).  By contrast, Steadman has alleged that the letter from the Warden of MCF-Lino Lakes "declared invalid" the imprisonment that resulted from the violation of Steadman's conditional release term. Pl.'s Mem., p. 26.

unlawful, . . . ."[11]  SAC, ¶¶ 39-42.

In summary, at this early stage in the litigation, Steadman's allegations are sufficient to overcome the Heck bar.  See Wilson, 154 F.3d at 761 ("Wilson's pardon is therefore an 'executive order' that 'expunged,' 'obliterated,' and 'invalidated' his conviction.  Heck requires nothing more.").  Accordingly, the Court recommends that Steadman's § 1983 claims against Roy, Peckskamp, and Krippner in their individual capacities be permitted to proceed.

### B.   State Law Claims

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 819 (8th Cir. 2004) ("A federal district court has the discretionary power to decline jurisdiction where it has 'dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

Because this Court has not recommended that Steadman's federal claims against Roy, Peckskamp, and Krippner in their individual capacities be dismissed, the Court will continue to exercise supplemental jurisdiction over Steadman's remaining state law claim against the State of Minnesota for false imprisonment.

## IV.   RECOMMENDATION

---

[11]    Steadman did not argue that Newcomb, a decision by a state tribunal, invalidated his conditional release—which is another basis for overcoming Heck.

For the reasons set forth above, and based upon all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Defendants Tom Roy, Carol Krippner, Thomas Peckskamp, and the State of Minnesota's Motion to Dismiss [Docket No. 13] be **GRANTED** in part and **DENIED** in part as follows:

1.     All § 1983 claims against Roy in his official capacity be DISMISSED WITHOUT PREJUDICE.

2.     All § 1983 claims against the State of Minnesota be DISMISSED WITHOUT PREJUDICE.

3.     All claims seeking dismissal of § 1983 claims against Roy, Peckskamp, and Krippner in their individual capacities be DENIED.

4.     All claims seeking dismissal of the state law claim of false imprisonment against the State of Minnesota be DENIED.

Dated:        March 23, 2015

                                                            *s/ Janie S. Mayeron*
                                                            JANIE S. MAYERON
                                                            United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 6, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.